IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re<br><br>LOGAN T. JOHNSTON, III,<br><br><br><br>Debtor. | Chapter 11<br><br>Case No. 2:01-bk-06221-SSC |
| LOGAN T. JOHNSTON, III,<br><br>                Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>INTERNAL REVENUE SERVICE<br><br>                Defendant. | Adv. No. 2:08-ap-00290-SSC<br><br>(For Electronic Docketing Only; Not For Publication)<br><br><br><br>**MEMORANDUM DECISION CONCERNING THE TREATMENT OF GAP INTEREST IN THE DEBTOR'S CONFIRMED PLAN** |

## I. INTRODUCTION

This matter comes before the Court on a "Complaint for Willful Stay Violation of Discharge Injunction" ("Complaint") filed with the Court on April 17, 2008 by the Plaintiff, Logan T. Johnston, III ("Plaintiff"), which was amended ("Amended Complaint") on April 21,

1

2008.[1] An "Answer to Amended Complaint for Willful Violation of Discharge Injunction" ("Answer") was filed on June 26, 2008 by the Defendant, the United States of America[2] ("Defendant"). After initial proceedings in this matter, the parties filed a Stipulation of Facts on February 13, 2009, and Cross-Motions for Summary Judgment on February 17, 2009.[3] This Court conducted oral argument on the Motions on April 16, 2009, and the parties filed post-hearing case citations on a discrete issue. Thereafter the Court took the matter under advisement.

Taking into account the arguments of the parties, the documents filed, and the entire record before the Court, the Court has set forth in this decision its findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52, Bankruptcy Rule 7052. The Court has jurisdiction over this matter, and this is a core proceeding. 28 U.S.C. §§ 1334 and 157 (West 2008).

## II. FACTUAL BACKGROUND

On May 14, 2001, the Plaintiff filed a voluntary Chapter 11 petition.[4] Notice of the Plaintiff's bankruptcy petition was mailed to all of the Plaintiff's creditors, including the

---

**1.** Logan T. Johnston, III, filed his bankruptcy petition on May 14, 2001. As a result, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 is not applicable to this matter. In re Reynoso, 477 F.3d 1117, 1120 n.1 (9th Cir. 2007).

**2.** In the Answer, the Defendant correctly states that the Internal Revenue Service is an agency of the United States, and as a result, the Plaintiff need only have named the United States as the party against whom he was proceeding. The Plaintiff's caption refers to the United States and the Internal Revenue Service. The Plaintiff should correct the caption to eliminate the Internal Revenue Service as a party. For purposes of this decision, the Court shall consider the Untied States as the proper party in interest, and may refer to the Untied States, the Internal Revenue Service, or the IRS, as appropriate, in its analysis.

**3.** The Plaintiff filed a Motion for Partial Summary Judgment, leaving open the issue of his attorneys' fees.

**4.** See Administrative Docket No. 1.

2

Internal Revenue Service ("IRS").[5] Thereafter, on June 5, 2001, the IRS filed a proof of claim for income taxes owed by the Plaintiff.[6] Subsequently, on April 2, 2002, the IRS filed an amended proof of claim.[7] The IRS' amended proof of claim listed a total tax claim in the amount of $125,957.00, of which $83,823.10 was listed as a priority tax claim.

The Plaintiff filed his Plan of Reorganization on January 16, 2002, followed by his Disclosure Statement on February 1, 2002.[8] The Plaintiff also filed an Amended Plan of Reorganization ("Amended Plan") on February 1, 2002.[9] On February 26, 2002, the Court held a hearing regarding the Plaintiff's Disclosure Statement. No objections were presented at the hearing, and the Court, having found adequate information in the Disclosure Statement, entered an order approving the Disclosure Statement ("Disclosure Order") on February 27, 2002.[10] The Disclosure Order required that a creditor file an acceptance or rejection to the Amended Plan by March 8, 2002. The Defendant concedes that it received (1) the notice of the Disclosure Statement, the Amended Plan, and the Disclosure Order and (2) a ballot to accept or reject the Plaintiff's Amended Plan.

On March 30, 2005, the Court issued its Order of Confirmation, which provided for confirmation of the Plaintiff's Amended Plan, with modifications not relevant to this adversary.[11] The IRS never filed an objection to confirmation, did not file any post-confirmation

---

**5.** See Docket No. 19, Page 2, ¶ B.

**6.** See Docket No. 19, Page 2, ¶ C.

**7.** Id.

**8.** See Administrative Docket Nos. 52, 54.

**9.** See Administrative Docket No. 55.

**10.** See Administrative Docket No. 62.

**11.** Because it was a contested confirmation hearing, the Court entered its Memorandum Decision in the matter on March 30, 2005. See Administrative Docket No. 290. The Court entered an Order Incorporating Memorandum Decision, which provided for confirmation of the Debtor's Amended Plan (the "Confirmation Order") on March 30, 2005. See Administrative

3

motions concerning the contested confirmation hearing, and did not appeal the Confirmation Order.

Pursuant to the Amended Plan, the Plaintiff paid the IRS' priority tax claim of $83,823.10 on or about October 4, 2005. The parties have stipulated, for purposes of the issues now presented, that between June 5, 2001 and April 2006, they never discussed the Amended Plan or what effect confirmation of the Amended Plan would have on the IRS' priority tax claim.[12]

According to the IRS, between the petition date of May 14, 2001 and the confirmation date of March 30, 2005, interest in the amount of $19,612.87 had accrued on the priority tax debt. In April of 2006, the IRS began sending the Plaintiff letters in an effort to collect this accrued interest. In response to these letters, the Plaintiff, believing that such interest had been discharged, filed this adversary proceeding.

### III. DISCUSSION

#### A. Sovereign Immunity

The United States, as a sovereign, is immune from suit unless it consents to being sued. United States v. Shaw, 309 U.S. 495, 500-01, 60 S.Ct. 659, 661, 84 L.Ed. 888 (1940); Gilbert v. DaGrossa, 756 F.2d 1455, 1458 (9th Cir. 1985); Hutchinson v. United States, 677 F.2d 1322, 1327 (9th Cir. 1980). Consent, through waiver of its right to sovereign immunity, must be "unequivocally expressed." United States v. King, 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969). Pursuant to 26 U.S.C. § 7433(e), Congress has conditionally waived

---

Docket No. 291. For purposes of this Decision, the Court shall refer to all of these documents as the "Confirmation Order." It is important to remember that the Plaintiff had to resolve a number of objections to the confirmation of his Amended Plan and had to conduct a contested hearing on confirmation concerning the objection to confirmation filed by his ex-spouse, Ms. Paula Parker. As a result, the confirmation process took longer than expected, allowing any creditor or interested party ample opportunity to alert the Court of any noticing issues or problems associated with the Plaintiff's Amended Plan.

**12.** See Docket No. 19, Page 2, ¶ I.

4

sovereign immunity when an officer or employee of the IRS willfully violates Section 362 or Section 524. *See also* Kuhl v. United States, 467 F.3d 145, 147 (2d Cir. 2006). However, in order to obtain damages under 26 U.S.C. § 7433(e), the debtor must first exhaust the administrative remedies available within the IRS. 26 U.S.C. § 7433(d)(1). The party bringing suit bears the burden of showing an unequivocal waiver of sovereign immunity. Vacek v. U.S. Postal Serv., 447 F.3d 1248, 1250 (9th Cir. 2006).

The Complaint in this case named two defendants in this matter: the United States of America and the IRS. The United States, in a footnote within one of its pleadings, indicates that the Internal Revenue Service, as an agency of the United States, is protected by sovereign immunity and cannot be sued in the absence of Congressional authorization. Gilbert v. DaGrossa, 756 F.2d 1455, 1458 (9th Cir. 1985). However, in its Motion for Summary Judgment, the United States regards the reference to the IRS in the Complaint, and other pleadings, as a clarification regarding which agency of the United States was involved in the dispute with the Plaintiff. Moreover, the United States did not assert the IRS' right to sovereign immunity within its Answer, and counsel for the United States appeared at the hearing in this matter. The IRS also filed a proof of claim in this matter, which acts as a waiver to sovereign immunity. 11 U.S.C. § 106(b). Accordingly, the Court finds that the issue of sovereign immunity was never effectively argued, raised, or presented to the Court; therefore, for purposes of this decision, the Court will consider the United States, and the IRS, as its agency, to have waived the issue of sovereign immunity and will turn to the merits of the controversy between the parties.

B. The Treatment of Gap Interest

The Bankruptcy Code exempts from discharge all allowed unsecured claims for income taxes in a tax year ending on or before "three years before the date of the filing of the [bankruptcy] petition." 11 U.S.C. §§ 507(a)(8), 523(a)(1). Although creditors are generally not allowed to include unmatured interest as part of their claims, it is well settled that interest continues to accrue on a nondischargeable debt during the "gap" between the petition filing date

5

and the date upon which a plan is confirmed. This accrued interest, called "gap interest" because of the time-frame in which it arises, is also nondischargeable. In re Artisan Woodworkers, 225 B.R. 185, 191 (9th Cir. BAP, 1998); Bruning v. United States, 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964); *See also* 11 U.S.C. § 502(b)(2).

While the Plaintiff's Amended Plan includes the payment, in full, of Defendant's unsecured priority tax claim, the parties dispute whether the Amended Plan also treats the gap interest associated with this claim. The Defendant argues that the Amended Plan is ambiguous as to the treatment of the gap interest because certain language within the Disclosure Statement is less precise or contradicts the language contained within the Amended Plan. Conversely, the Plaintiff argues that the Amended Plan is clear on its face, and the Disclosure Statement is a separate document that is not incorporated into the Amended Plan unless there is a specific statement so providing.

The Plaintiff primarily relies on Articles IV and VI within his Amended Plan to support his position that the gap interest has been discharged. The Articles provide as follows:

### ARTICLE IV
All impaired classes of claims and interests shall receive the distributions set forth in this Article on account of and in complete satisfaction of all such Allowed Claims (and any interest accrued thereon) and Allowed Interests. Without limiting the foregoing and effective upon the Effective Date, each creditor and each equity security holder (or its successor) shall be deemed to have assigned to the Debtor and all such parties shall be deemed to have waived, relinquished and released any and all of their rights and claims against the Debtor (other than as provided for in the Plan or the Court's order confirming the Plan).
. . . .
**Class 6: Priority Tax Claims**

. . . .. The [IRS'] priority taxes will be paid in deferred cash payments in the allowed amount of the claims within six years of the date of assessment under § 1129(a)(9)(C).

### ARTICLE VI
Except as otherwise provided in the Plan or in the Court's order confirming the Plan, . . . the Confirmation Order acts [as] a discharge, effective as of the Effective Date, of any and all debts of the Debtor that arose at any time before the entry of the

6

        Confirmation Order, including, but not limited to, all principal and
any and all interest accrued thereon, pursuant to § 1141(d)(1) of
the Bankruptcy Code.

The Court must first determine whether the Amended Plan, as the Debtor contends, is clear in its treatment of the gap interest, or whether, as the IRS argues, the Amended Plan is ambiguous. In order to make such a determination, the Court will review Articles IV and VI seriatim.

      Article IV of the Amended Plan begins by stating that the distributions made to the impaired classes of creditors will constitute "complete satisfaction" of those classes' claims. The Defendant argues that it is not an impaired creditor, and that as such, Article IV does not pertain to it. The Court disagrees. Under Ninth Circuit law, a claim is impaired if such claim is altered in any way under the plan. L & J Anaheim Assoc. v. Kawasaki Leasing Int'l (In re L & J Anaheim Associates), 995 F.2d 940 (9th Cir. 1993).

      In this case, the Defendant's claim was altered in several material ways. First, under the terms of the Amended Plan, the Defendant was to be paid on its claim over time, pursuant to 11 U.S.C. § 1129(a)(9)(C). At the time of confirmation, that Subsection provided as follows:

      (a) The court shall confirm a plan only if . . . –
          (9) Except to the extent that the holder of a particular
              claim has agreed to a different treatment of such claim,
              the plan provides that –
            (C)  with respect to a claim of a kind specified in
                section 507(a)(8) . . . the holder of such claim
                will receive on account of such claim deferred
                cash payments over a period not exceeding six
                years after the date of assessment of such claim,
                of a value, as of the effective date of the plan,
                equal to the allowed amount of such claim.[13]

Even if the payment of principal over time, pursuant to that Subsection, would not be considered impairment, the Plaintiff altered the Defendant's claim by not paying any interest thereon.

---

    **13.** Since the case was filed prior to the enactment of BAPCPA, the Court has utilized the statutory language that was applicable at the time of confirmation.

7

Accordingly, the Court finds that the Defendant's claim was impaired and, therefore, within the parameters of Article IV.  As such, the IRS waived any additional rights and relinquished and released any additional claims that it had against the Plaintiff.  Such a waiver of rights or release of claims includes the IRS' right to gap interest.

Article IV further provides that all creditors are deemed to have assigned their rights to the Plaintiff, and that said assignment constitutes a "waive[r], relinquish[ment] and release[] [of] any and all of [the creditors'] rights and claims against the [Plaintiff]."  Thus, even if the Defendant's right to gap interest somehow still survived irrespective of the initial language in Article IV, the remaining provisions in the Article clearly assign those rights to the Plaintiff. Effectively the Defendant transferred its right to gap interest to the Plaintiff.[14]  As such, the Plaintiff has shown a separate ground for the impairment of the Defendant's claim.

Article VI of the Amended Plan next states, and in the case of impaired classes reiterates, that upon plan confirmation, as evidenced by the entry of the Confirmation Order, the principal and interest on all debts, except as treated pursuant to the Amended Plan or the Confirmation Order, are discharged pursuant to 11 U.S.C. § 1141(d)(1).  At the time of confirmation, Subsection (d)(1) provided as follows:

> Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, confirmation of the plan –
> (A) discharges the debtor from any debt that arose before the date of such confirmation . . . whether or not –
>  (i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;
>  (ii) such claim is allowed under section 502 of this title; or
>  (iii) the holder of such claim has accepted the plan . . . .

---

**14.** Thus, the impairment of the Defendant's claim is reflected in the Plaintiff's failure to provide for any payment of interest to the Defendant and the separate assignment of any such interest to the Plaintiff.

8

In referring specifically to Section 1141(d)(1), the Plaintiff was alerting creditors that the provisions of 11 U.S.C. § 1141(d)(2) did not apply to their claims. At the time of confirmation, Section 1141(d)(2) provided that the confirmation of a plan did not discharge an individual debtor from any debt excepted from discharge under Section 523. This is an important distinction.[15] The Plaintiff drafted Article VI in a manner to alert creditors, in a clear manner, that unless the Amended Plan or the Confirmation Order was specifically changed, the entry of the Confirmation Order would discharge all debts of the Plaintiff, whether for principal or interest, and whether dischargeable or nondischargeable. In this case, the Confirmation Order was not amended to protect the rights of the Defendant, and the Defendant did not appeal the Order.

Based upon the foregoing, the Court concludes that Articles IV and VI of the Amended Plan were clear and alerted the Defendant that its claim was impaired, either because of the Plaintiff's failure to pay gap interest or because of the assignment of the Defendant's rights to the Plaintiff, and that the Defendant needed to take action to protect its right to gap interest. Because the Defendant took no timely action to protect its right to gap interest, the debt was discharged.

The Defendant next argues that even if the Amended Plan is not ambiguous and Articles IV and/or VI clearly apply, the Court must look beyond the Amended Plan to the Disclosure Statement, which is ambiguous and states only that all debts are to be discharged

---

**15.** In a case factually similar to this case, the debtor attempted to discharge the IRS' debt with the inclusion of a broad clause that released all debt pursuant to "11 U.S.C. § 1141." *See* Miller v. United States, 363 F.3d 999 (9th Cir. 2004). Because the debtor did not specify any particular Subsection, such as (d)(1), the Ninth Circuit concluded that the general reference to Section 1141 was ambiguous, and reconsidered the IRS' argument that gap interest was excepted from discharge under 11 U.S.C. §§ 1141(d)(2) and 523. Id. The Plaintiff's counsel stated at oral argument before this Court that the Miller decision was of concern to him and prompted him to specifically include Section 1141(d)(1) in the Amended Plan.

9

pursuant to "11 U.S.C. § 1141."[16] The Defendant essentially advances the argument that a plan and a disclosure statement form one document that must be read together. If the disclosure statement contains an ambiguity, that ambiguity must necessarily be incorporated into the plan.

The Ninth Circuit has held that "a Chapter 11 bankruptcy plan is essentially a contract between the debtor and his creditors, and must be interpreted according to the rules governing the interpretation of contracts." Miller v. United States, 363 F.3d 999, 1004 (9th Cir. 2004) *citing* Hillis Motors, Inc. v. Haw. Auto. Dealers Ass'n, 997 F.2d 581, 588 (9th Cir. 1993). As to the applicable law in interpreting such a contract, since the Plaintiff was a resident of Arizona at the time of filing of his bankruptcy petition and otherwise met the venue requirements, the Court should analyze the law of Arizona in resolving this dispute.

The general rule, under Arizona law, for one document to incorporate another writing is that the incorporating document must clearly indicate such an intent. Weatherguard Roofing Co. V. D.R. Ward Const. Co., 152 P.3d 1227, 1229 (Ariz. App. 2007). In reviewing the Amended Plan, there is no reference to the Disclosure Statement, nor is there any statement in the Amended Plan to evidence an intent to incorporate the Disclosure Statement. Furthermore, the language of the Disclosure Statement clearly states that should there be any inconsistency between the terms of the Amended Plan and the terms of the Disclosure Statement, the language of the Amended Plan is controlling.[17] Moreover, the Confirmation Order only refers to the Amended Plan, not to the Disclosure Statement. Thus, the critical document for the Court's interpretation of the rights and remedies of the parties should be the Amended Plan,

---

**16.** Presumably such an ambiguity would allow the Defendant to rely on the decision of Miller v. United States, *supra* n.14, to argue that this Court should reconsider whether the gap interest was discharged.

**17.** See Administrative Docket No. 54, Page 3, ¶ ¶ 1-3. The Court also conducted several hearings on the Disclosure Statement. See Administrative Docket Nos. 61, 62. Presumably any ambiguities or requests to have the Disclosure Statement incorporated into the Amended Plan should have been taken care of at that time.

10

which return the Court and the parties to the provisions of Articles IV and VI already analyzed by the Court.

The Court concludes that the Defendant's alternative theory is incorrect, and the Amended Plan did not incorporate the Disclosure Statement. Accordingly, the Amended Plan effectively discharged the Defendant's claim to gap interest.[18]

## IV. CONCLUSION

The Court finds that to the extent that the United States may have had a defense based upon sovereign immunity, such defense was waived both by the appearance of counsel at the hearing as well as the filing of its proof of claim. Furthermore, the Court finds that the Amended Plan is clear as to its treatment of the Defendant's gap interest. Finally, the Court finds that the Disclosure Statement was not incorporated into the Amended Plan. Based upon the foregoing, the Court holds that the gap interest was discharged pursuant to the Debtor's Amended Plan.

The Court must set a further hearing to determine whether the Defendant has separately violated the Plaintiff's discharge injunction and whether, if such a violation has occurred, the Plaintiff is entitled to attorneys' fees. The Plaintiff's Motion for Partial Summary Judgment is granted, and the Defendant's Motion for Summary Judgment is denied. The Court will enter an order incorporating this decision. A separate notice will be issued by the Clerk's

---

**18.** Although the parties discussed the Ninth Circuit's recent holding in <u>Espinosa v. United Student Aid Funds, Inc.</u>, 553 F.3d 1193 (9th Cir. 2008), they believe the decision to be inapplicable to the facts in this case. Moreover, since the decision allowed a student loan obligation, also a nondischargeable debt within the parameters of Section 523, to be discharged pursuant to the provisions of the duly noticed plan without the commencement of an adversary proceeding, it supports the argument of the Plaintiff that the Amended Plan controls the treatment of the Defendant's gap interest claim. Furthermore, presumably based upon <u>Espinosa</u>, the Defendant conceded that if the Court found the Amended Plan unambiguous, and did not incorporate the Disclosure Statement into the Amended Plan, the Defendant's claim for gap interest would be discharged. Having found the Amended Plan language unambiguous, this Court has completed its analysis.

11

Office scheduling a Bankruptcy Rule 7016 conference on the remaining issues in this adversary.

                DATED this 30th day of July, 2009.

                /s/ Sarah Sharer Curley
                Honorable Sarah Sharer Curley
                U. S. Bankruptcy Judge

BNC TO NOTICE

12